UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARTHUR MIDDLETON, Derivatively on Behalf of FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) | Civil No. 1:07-cv-01221-RJL |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| FRANKLIN D. RAINES, et al., | ) ) | |
| Defendants, | ) ) | |
| – and – | ) ) | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, a Federally Chartered Corporation Governed by Delaware Law, | ) ) ) ) | |
| Nominal Party. | ) ) ) | |

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

**LIMITED QUESTION PRESENTED**

Where corporate directors have been on notice for over three years, both through a prior demand and efforts to prosecute derivative litigation, of undeniable misconduct by corporate executives (involving billions of dollars in restatements and hundreds of millions of dollars in improper benefits), must plaintiff repeat a demand that was previously made and refused by the board of directors ("Board") in order to establish standing for a demand-refusal suit?

**BRIEF ANSWER:**

No. Where the Board was put fairly on notice of their obligations as fiduciaries, and of shareholders' request that they take action "to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers'" (*Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95 (1991)), a shareholder seeking to redress conduct otherwise ignored by the Board need not reiterate the prior call to take appropriate action.

**I.   ARGUMENT**

"[T]he usual rule [is] that the proper party to bring a claim on behalf of a corporation is the corporation itself, acting through its directors or the majority of its shareholders" *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 531-32 (1984). When the Board fails to bring an action on behalf of a wronged corporation, "a stockholder is not powerless to challenge director action which results in harm to the corporation" and "the derivative suit [is a] potent tool[] to redress the conduct of a torpid or unfaithful management." *See Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984); *see also Kamen*, 500 U.S. at 95 ("the purpose of the derivative action was to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers'").

Where a Board refuses to act in the face of a clear outcry, shareholders have two procedural mechanisms ("'arrow[s]'" in their "'quiver'") to take action on their own. *Scattered Corp. v. Chicago Stock Exch.*, 701 A.2d. 70, 74 (Del. 1997).[1] Shareholders seeking to protect the corporation may either demonstrate that demand is excused as futile ("Demand-Excused") or that a demand upon the Board was made and not acted upon ("Demand-Refused"). *Id.*; Fed. R. Civ. P. 23.1. Where the latter approach is taken (either by desire or necessity), the Board must be given sufficient notice so it can pursue the action on its own (if it chooses to do so). *Id.*; *see also Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988) ("The purpose of pre-suit demand is to assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation and to control any litigation which does occur"). Accordingly, the critical issue in pursuing derivative litigation with the Demand-Refused "arrow" is whether the Board was sufficiently on

---

[1] Plaintiff has pled in detail facts demonstrating defendants' failure to act, including: (1) Fannie Mae's Board failed to bring a suit in response to a demand made upon it (¶¶13, 51); (2) the Board failed to do so despite the serious nature of the wrongs alleged in the demand, including, but not limited to, the defendants' knowing violations of numerous accounting rules resulting in a restatement of over $6 billion dollars (one of the largest restatements in U.S. history) (¶¶2, 20); (3) the Board failed to do so despite the serious injuries caused to Fannie Mae as a result of defendants' actions, including, but not limited to, huge financial losses, damage to reputation and goodwill, exposure to massive class action suits and governmental and regulatory investigations, and negative political repercussions (¶¶13-15, 61-64); (4) the Board failed to do so despite the fact that while Fannie May suffered, defendants profited as a result of their financial manipulations, involving over $245 million in incentive compensation and over $23 million in stock sales at an inflated price (¶¶3-10, 64); (5) the Board failed to do so because it was actively involved in defendants' wrongful acts, and its members were potentially personally liable for their involvement (¶¶92-103); (6) the Board failed to do so because its members had personal financial interest in the defendants' misconduct, including, but not limited to, salary and bonus incentives, profits from stock options, profits from stock sales at an inflated price (¶¶104-114); (7) the Board failed to do so because Raines rewarded its compliance by funneling millions of dollars into organizations in which Board members held senior positions (¶¶115-140); (8) the Board failed to do so because many of its members had close personal relationships with Raines (¶¶125, 131, 138); and (9) the Board failed to do so in direct contrast of its affirmative action permitting Raines and Howard to retire and/or resign with profits in tens of millions in additional severance pay, in direct defiance of OFHEO, and one week after the announcement that the SEC would require a massive restatement (¶¶16, 55). All ¶ and ¶¶ references are to plaintiff's Complaint, filed on July 5, 2007.

notice of shareholders' desire to have action taken against the "faithless fiduciaries" before the action is brought by shareholders.

While the procedural aspects of Fed. R. Civ. P. 23.1, and the Delaware analog (Delaware Chancery Court Rule 23.1), require that a formal demand upon the Board be made before proceeding with Demand-Refused derivative litigation, the rule does ***not*** require that the demand be made by the shareholder who ultimately pursues litigation on behalf of the corporation.  *Id*.  Courts have made clear that "the identity of the specific representative shareholder plaintiff is not a paramount concern" because "the corporation is always the real party in interest" in derivative suits.  *In re MAXXAM, Inc./Federated Dev. S'holders Litig.*, 698 A.2d 949, 956 (Del. Ch. 1996) (approving the substitution of new derivative plaintiffs when the original plaintiff can no longer pursue the litigation) (citing *Hutchison v. Bernhard*, 220 A.2d 782 (Del. 1965), *Truncale v. Universal Pictures Co.*, 76 F. Supp. 465 (S.D.N.Y. 1948), and *Pikor v. Cinerama Productions Corp.*, 25 F.R.D. 92 (S.D.N.Y. 1960)).

Indeed, for more than 60 years courts have understood that the making of a demand under Fed. Rule 23.1 is simply a procedural hurdle that, once overcome, is irrelevant to the continuation of the litigation.  In *Mullins v. De Soto Sec. Co.*, 3 F.R.D. 432 (D. La. 1944), the district court refused to dismiss a derivative suit being pursued by new plaintiffs who did not make an initial demand or bring the initial lawsuit.  The court expressly held that "[t]he necessity of demand by the applicants for intervention to the officers of the corporation is an ***unnecessary requirement*** to impose on the applicants ***in the face of the full demand by the original plaintiff and the unqualified refusal of this demand*** for redress by the officers of the corporation."  *Id*. at 435 (emphasis added).

Here, like in *Mullins,* where defendants have clearly refused to take action on the corporation's behalf "in the face of the full demand by [an] original plaintiff," defendants cannot use

- 3 -

the failure of a substitutionary plaintiff to make his own demand as a bar to substantive litigation.[2] This is particularly true when these same defendants are claiming the original plaintiff is infirm and cannot pursue the litigation on his own. *See MAXXAM*, 698 A.2d at 956.

The ruling in *Judicial Watch, Inc. v. Deutsche Bank*, No. 99-2566, 2000 U.S. Dist. LEXIS 6153 (D.D.C. Apr. 28, 2000), upon which defendants principally rely, is not a sufficient basis to deny plaintiff here the opportunity to proceed with litigating on the corporation's behalf. *Judicial Watch* held, without analysis, that the plaintiff in that case could not "'effectively rely on an earlier demand made by another [shareholder] to satisfy [the demand requirement].'" *Id*. at *11 (quoting acknowledged "dicta" from *Kaplan*, 540 A.2d at 729).[3] Importantly, the sole rationale for the court having adopted the dicta in *Kaplan* was that plaintiffs in *Judicial Watch* – unlike plaintiff here – "cited no contrary authority to support their position" that a prior demand was sufficient to meet the threshold requirement to bring a derivative action. *Id*. at *11-*12.

Not only is the decision in *Judicial Watch* inconsistent with *Mullins*, it also was in a procedural and factual posture far different than here. In *Judicial Watch*, a demand was made, on October 18, 1999, to "deny or rescind the home mortgage application by the Clintons by . . . October 19, 1999" *Id*. at *3. Within 10 days, the PNC Bank Board had already acted on the demand

---

[2] To the extent that the Court believes that plaintiff Middleton needs the procedural safeguard of having sent his own demand letter, he has now done so. *See* Ex. A attached hereto. If so required, plaintiff could amend the current complaint, or file a new complaint with Mr. Hansen, a Fannie Mae shareholder since 1972 who joined in Mr. Middleton's demand. *See 7A C. Wright and A. Miller, Federal Practice and Procedure* §1831, at 377-78 (1972) ("If a substantial period has transpired between the demand and institution of the action, the court may insist on a second demand or proof that the directors or the nature of the claim have not changed.").

[3] Importantly the court did undertake a detailed analysis when dismissing the case on other grounds. *Id*. at *12-*14. These grounds included the fact that the Company did fully consider the demand, hired a former judge to vet the claims, successfully opposed an injunction on the same grounds as the demand, and exercised valid business judgment in recommending the dismissal of the action. *Id*.

by hiring a former judge, with no affiliation, to analyze the potential claims, and based on that analysis recommended to dismiss the action. *Id.* at *4. Before receiving the response, Judicial Watch amended its complaint and moved for a TRO, with plaintiffs that did not send a demand and with no explanation as to why the person who sent the original demand was no longer involved. *Id.* at *5. Nonetheless, the court still heard the TRO and denied it based, in part, on the report from the former judge who determined that the transaction at issue was legal. *Id.*

Thus, unlike the situation in *Mullins,* and here, the new plaintiffs were not seeking to take the place of a potentially infirm plaintiff "in the face of the full demand by the original plaintiff ***and the unqualified refusal of this demand for redress by the officers of the corporation***" *Mullins,* 3 F.R.D. at 435. To the contrary, rather than simply refusing to act over a three-year period, as defendants have done here, the defendant in *Judicial Watch* undertook exactly the appropriate review and course of conduct. In short, plaintiffs in *Judicial Watch* had their day in court.

Moreover, *Judicial Watch*'s reliance on *Kaplan*, in the context of a Demand-Refused action as opposed to a Demand-Excused suit, was misplaced. In *Kaplan,* the plaintiff initiated a ***Demand-Excused*** suit based on a prior demand made by another shareholder. *See Kaplan*, 540 A.2d at 729. In response to plaintiff's allegation that "'such a demand would have been futile, as evidenced by the futility of those demands that were made" (*id.*), the *Kaplan* court noted that "[p]laintiffs cannot effectively rely on an earlier demand made by another . . . shareholder . . . to satisfy Chancery Court Rule 23.1." *Id*. at 731 n.2. In other words, rejection of a prior demand cannot serve as the basis for later arguing that demand is futile (Demand-Excused). The *Kaplan* court said ***nothing*** of whether a shareholder could rely on a prior demand in a follow-up ***Demand-Refused*** action. In fact, the shareholders who originally made the demand in *Kaplan* were actually intervened in the action, but again only sought to pursue a Demand-Excused action, instead of a Demand-Refused action, based on their prior demand. *Id.*

The danger or potential manipulation that can result from using a prior demand to justify a Demand-Excused case, as opposed to a Demand-Refused case, have been clarified and explained in Delaware in cases that were decided after *Kaplan*. *See, e.g.*, *Maurer v. Johnson*, No. 9725, 1989 WL 997172 (Del. Ch. May 10, 1989). For example, in *Maurer*, like in *Kaplan,* the plaintiffs sought to demonstrate that demand was futile because an earlier demand had not been acted upon by the board of directors. *See id*. at *1. In rejecting the argument that demand was futile based on a prior demand, the *Maurer* court explained that the proceedings in a Demand-Excused case is different than that of a Demand-Refused case. If a plaintiff was allowed to use a prior refusal to demonstrate demand futility, "any two shareholders could convert a 'demand rejected' derivative cause of action into one for which demand was excused." *Maurer*, 1989 WL 997172, at *1. Not surprisingly, based on the fact that there could be no danger that a shareholder would obtain some advantage if he or she proceeded in a Demand-Refused context, on a prior demand, the *Maurer* court implicitly approved exactly what plaintiff has done here. The *Maurer* court explained that "in order for the Board's refusal of . . . [the prior] demand to ***excuse demand*** here, to the extent that it can do so, plaintiffs ***must show that the refusal was wrongful***") (emphasis added) (citing *Kaplan v. Peat, Marwick, Mitchell & Co.*, 529 A.2d 254 (Del. Ch. 1987), *aff'd in part, rev'd in part*, 540 A.2d 726 (Del. 1988)). That is exactly what plaintiff here has done through his detailed allegations. *See* n.1, *supra*.

In sum, plaintiff is entitled to rely on a prior demand in bringing the instant Demand-Refused action (and, in an abundance of caution, has in any event made his own separate demand). Thus, defendants' Motion to Dismiss should be denied.

## II.     CONCLUSION

For the reasons above, plaintiff respectfully requests this Court to deny defendants' motion for dismissal.

DATED:  November 16, 2007

Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
RANDALL J. BARON
A. RICK ATWOOD, JR.
BENNY C. GOODMAN III (D.C. Bar #489187)


             s/ Benny C. Goodman
   BENNY C. GOODMAN III (D.C. Bar #489187)

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
NANCY M. JUDA, (D.C. Bar #445487)
1100 Connecticut Avenue, N.W., Suite 730
Washington, DC  20036
Telephone:  202/822-2024
202/828-8528 (fax)

THE WEISER LAW FIRM, P.C.
ROBERT B. WEISER
121 N. Wayne Avenue, Suite 100
Wayne, PA  19087
Telephone:  610/225-2677
610/225-2678 (fax)

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
217 Second Avenue, North
Nashville, TN  37201-1601
Telephone:  615/244-2202
615/252-3798 (fax)

Attorneys for Plaintiff

S:\CasesSD\Fannie Mae Derv\BRF00047252.doc

CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 16, 2007.

s/ Benny C. Goodman III
BENNY C. GOODMAN III

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: Bennyg@csgrr.com

# Mailing Information for a Case 1:07-cv-01221-RJL

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Randall J. Baron**
  randyb@csgrr.com,jaimem@csgrr.com,e_file_sd@csgrr.com

- **Eric R. Delinsky**
  edelinsky@zuckerman.com

- **Benny C. Goodman , III**
  bgoodman@csgrr.com

- **Holly Ann Pal**
  hpal@zuckerman.com

- **Steven Mark Salky**
  ssalky@zuckerman.com

- **Joseph Marshall Terry , Jr**
  jterry@wc.com

- **Michael J. Walsh , Jr**
  mwalsh@omm.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`

# EXHIBIT A



SAN DIEGO • SAN FRANCISCO
NEW YORK • BOCA RATON
WASHINGTON, DC • HOUSTON
LOS ANGELES • PHILADELPHIA

Randall J. Baron
RandyB@csgrr.com

November 13, 2007

<u>OVERNIGHT DELIVERY</u>

Board of Directors, Federal National Mortgage Association
c/o Jeffrey W. Kilduff, Esquire
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20066

    Re:    *Shareholder Demand*

Dear Board Members:

    We represent Arthur Middleton and George Hansen, long-time shareholders of Federal National Mortgage Association ("Fannie Mae" or the "Company"). Messrs. Middleton and Hansen are concerned that the Board has failed to take any meaningful steps to remedy the damage to Fannie Mae that has been and is being caused by the accounting manipulations perpetrated and overseen by Fannie Mae's former Chairman CEO, Franklin D. Raines ("Raines"), Fannie Mae's former Vice-Chairman and CFO, J. Timothy Howard ("Howard") and the remaining members of Fannie Mae's Board of Directors, from January 1, 1998, to the present.[1] As the Board is well aware, and as set forth more fully in the enclosed complaint, the accounting manipulations required the Company to restate its earnings by over $6 billion dollars, and caused additional untold billions of dollars in damages to Fannie Mae as a result of a decrease in market capitalization and the costs and fines associated with governmental and regulatory agency investigations into the accounting manipulations.

    Moreover, Messrs. Middleton and Hansen are equally concerned that the Board has failed to take any steps to recover from Raines and Howard, and Fannie Mae's remaining executives complicit in the accounting manipulations, over $245 million in unearned bonuses that were paid only because the accounting manipulations over-inflated Fannie Mae's earnings. The Board also has failed to take any steps to recover undeserved severance

---

[1]     In addition to Raines and Howard, members of the Fannie Mae board who were directly complicit in perpetrating and/or overseeing the accounting manipulations include Daniel H. Mudd ("Mudd"), Kenneth M. Duberstein ("Duberstein"), Stephen B. Ashley ("Ashley"), Thomas P. Gerrity ("Gerrity"), Ann Korologos ("Korologos"), Frederic V. Malek ("Malek"), Donald B. Marron ("Marron"), Joe K. Pickett ("Pickett"), Leslie Rahl ("Rahl"), H. Patrick Swygert ("Swygert"), Anne M. Mulcahy ("Mulcahy") and John K. Wulff ("Wulff").

655 West Broadway, Suite 1900 • San Diego, California 92101-8498 • 619.231.1058 • Fax 619.231.7423 • www.csgrr.com

® 202  ® 115



Board of Directors, Federal National Mortgage Association
November 13, 2007
Page 2

benefits paid to Raines and Howard when the two former executives were dismissed from Fannie Mae because of their role in the accounting manipulations.

As members of the Board, you have a fiduciary duty to Fannie Mae and its shareholders to ensure that damage caused to the Company by any party – especially Company insiders – does not go unremedied. The Board has to this point failed in this duty.

Accordingly, Messrs. Middleton and Hansen hereby demand that you immediately bring suit against Raines, Howard, Mudd, Duberstein, Ashley, Geritty, Korologos, Malek, Marron, Pickett, Rahl, Swygert, Mulcahy and Wulff, to recover for damages caused by their direct complicity in and/or oversight of the accounting manipulations at Fannie Mae beginning in January 1, 1998. Additionally Messrs. Middleton and Hansen hereby demand that you immediately bring suit against Raines and Howard seeking disgorgement of their illicitly-garnered compensation, and against Mudd, Duberstein, Ashley, Geritty, Korologos, Malek, Marron, Pickett, Rahl, Swygert, Mulcahy and Wulff for failing to seek disgorgement and/or permitting Raines and Howard to leave the Company under circumstances that allowed them to retain and be paid their severance packages.

We thank you for your prompt attention to this serious matter. Should you have any requests, questions or concerns, please do not hesitate to contact us.

Very truly yours,

RANDALL J. BARON

RJB:llf

Enclosure: [Demand Refused] Verified Shareholders' Derivative Complaint for Breach of Fiduciary Duty, Abuse of Control, Gross Mismanagement, Constructive Fraud, Corporate Waste, Unjust Enrichment and Violations of the Sarbanes-Oxley Act of 2002, Seeking Equitable Relief and Damages

S:\CasesSD\Fannie Mae\Corres\BoD FNMA 01.doc