**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re Federal National Mortgage Association Securities, Derivative, and "ERISA" Litigation | MDL No. 1668 |
| Federal Housing Finance Agency as Conservator for the Federal National Mortgage Association v. Raines, *et al.* (Middleton) | Civil Case No. 07-1221 (RJL) |

**MEMORANDUM OPINION**
(July **22**, 2010) [# 14, 15, 18, 58, 61]

This case is a desperate attempt to overcome the Court's earlier decision, which

has since been affirmed by our Circuit Court, to dismiss a consolidated shareholder

derivative action against various former and then-current officials of the Federal National

Mortgage Association ("Fannie Mae") on the ground that the shareholder plaintiffs lacked

standing to bring a derivative suit because they failed to make the requisite demand on

Fannie Mae's board of directors pursuant to Federal Rule of Civil Procedure 23.1. While

the Court's decision in the consolidated action was on appeal, plaintiff Arthur Middleton

brought his own derivative suit raising essentially the same allegations. Fannie Mae, as

the nominal defendant, joined by Franklin D. Raines and J. Timothy Howard (together,

"the individual defendants"), moved to dismiss Middleton's complaint for failure to make

a demand on Fannie Mae's board. Since these motions were filed, the Court has replaced

Middleton as the derivative shareholder plaintiff with the Federal Housing Finance

Agency ("FHFA"), the statutory conservator of Fannie Mae. FHFA initially adopted

Middleton's response to the motions to dismiss but has since moved to voluntarily dismiss the case *without prejudice*. Not surprisingly, the individual defendants opposed FHFA's Motion for Approval of Voluntary Dismissal and have moved to dismiss the case *with prejudice* for failure to prosecute.

Having considered the parties' arguments, the Court finds that the individual defendants would suffer prejudice if the Court were to grant FHFA's motion now that the individual defendants have justifiably relied on Fannie Mae's fully briefed Motion to Dismiss, which, if granted, would completely dispose of the claims against them. Accordingly, FHFA's Motion for Approval of Voluntary Dismissal without Prejudice is DENIED. At the same time, the individual defendants' Motion to Dismiss with Prejudice for Failure to Prosecute is also DENIED because they have failed to show that FHFA's conduct is sufficiently egregious to warrant such a harsh remedy. Finally, regarding Fannie Mae's pending Motion to Dismiss, the Court concludes that plaintiff Middleton failed to make the demand required by Rule 23.1, and as a result, he lacks standing to bring this suit. The Court further concludes that Middleton's reliance on an earlier demand made by a shareholder plaintiff in a related case does not suffice to confer standing on Middleton. Hence, Fannie Mae's Motion to Dismiss, which was joined by the individual defendants, is GRANTED.

# BACKGROUND[1]

The facts of this case arise from allegations that Fannie Mae engaged in improper accounting practices. These allegations are exhaustively explained in my previous opinions. *See, e.g., In re Fannie Mae Derivative Litig.*, 503 F. Supp. 2d 9, 11-14 (D.D.C. 2007). Beginning in September 2004, ten plaintiffs commenced shareholder derivative actions against former and then-current officers and directors of Fannie Mae. *Id.* at 13 & n.3. Various parties promptly moved to consolidate these actions. One of the shareholder plaintiffs was James Kellmer. Although he did not oppose consolidation, he did oppose filing a consolidated complaint, and he sought to have his counsel appointed as one of the co-lead counsel. (Pl. Kellmer's Formal Position [Civ. No. 05-37, Dkt. # 7] at 10, 5, 4). He argued that it was necessary to distinguish his derivative suit, the only one in which a shareholder made a demand on Fannie Mae's board of directors, from the other derivative

---

[1] The following recitation of facts includes information obtained from pleadings and court orders in a different, but related, case. The Court, of course, may take judicial notice of public records like docket sheets and other court documents. *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (noting that "docket sheets are public records of which the court could take judicial notice"). Even though only motions to dismiss are presently before the Court, the Court's use of information from the related case is not improper because the complaint incorporates and relies upon the demand made in that case to establish Middleton's standing to bring suit in this case. *See id.* (holding that a district court's reliance on a docket sheet from a different case was not erroneous because (1) docket sheets are public records of which the court can take judicial notice, and (2) the complaint incorporated pleadings that were referenced on the docket sheet).

suits, where the shareholders declined to make such a demand on the theory that doing so would have been futile. (*Id.* at 4).

In February 2005, the Court granted the motions to consolidate and appointed Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust and Wayne County Employees' Retirement System as co-lead plaintiffs. (Feb. 14, 2005 Mem. Op. and Order [Civ. No. 05-37, Dkt. #25] at 3-4). The Court explicitly addressed Kellmer's argument that "demand made" and "demand futile" cases should not be consolidated into one action but decided nevertheless "that this distinction is insufficient to necessitate separate actions at this point in the litigation." (*Id.* at 4-5). As a result, the Court entered Pretrial Order No. 1, which consolidated the shareholder derivative actions "for all purposes through final judgment." (Pretrial Order No. 1 [Civ. No.05-37, Dkt. #26] at 4). The Court also directed that the dockets for the individual cases be closed, (*id.*), and that the co-lead plaintiffs file a consolidated complaint that would "supersede all existing complaints filed in this action," (*id.* at 7).

Pursuant to the Court's Order, the co-lead plaintiffs filed an initial consolidated complaint in September 2005, which they later amended in September 2006. The Amended Complaint asserts two types of claims: (1) "breach of fiduciary duties and gross mismanagement arising out of the company's misapplication of FAS 91 and 133 ('accounting-related claims')"; and (2) "claims for corporate waste and unjust enrichment relating to the Board's approval of certain executives' compensation

4

('compensation-related claims')." *In re Fannie Mae Derivative Litig.*, 503 F. Supp. 2d at 13-14. The co-lead plaintiffs abandoned Kellmer's demand-made theory and instead proceeded on a theory that it would have been futile to make a successful demand on Fannie Mae's board. The defendants moved to dismiss the consolidated complaint claiming, among other things, that the co-lead plaintiffs failed to allege sufficient facts to establish futility.

Ultimately, on May 31, 2007, I dismissed the consolidated derivative complaint because the plaintiffs failed "to make the requisite Rule 23.1 demand upon the Board of Directors of Fannie Mae prior to filing this derivative suit." *Id.* at 14. Among the cases that I dismissed as part of the consolidated action was Kellmer's. The co-lead plaintiffs promptly appealed.

While that appeal was pending, plaintiff Arthur Middleton brought this case, raising essentially the same claims as in the consolidated derivative action. (*See* Compl. [Civ. No. 07-1221, Dkt. #1]). Middleton makes no allegation in his Complaint that he personally made a demand on Fannie Mae's board pursuant to Rule 23.1 or that making such a demand would have been futile. The only reference to a demand made on Fannie Mae's board is a shareholder demand dated September 24, 2004. (*Id.* ¶¶ 13, 51). That demand—the only one made by any of the derivative plaintiffs—was made by plaintiff Kellmer, whose claims were dismissed in the consolidated action. A few months later, in October 2007, Fannie Mae, as the nominal defendant, moved to dismiss Middleton's

Complaint on the ground that he lacked standing to bring the derivative action because he failed to satisfy the requirements for making a demand under Rule 23.1. Fannie Mae also argued that Middleton could not "piggyback" on a demand already made by another shareholder. The individual defendants joined Fannie Mae's Motion to Dismiss.

Subsequent developments in the case arising from FHFA's appointment as Fannie Mae's conservator have now raised questions about whether this Court should still decide the Motion to Dismiss. On September 8, 2008, months after our Circuit Court upheld my decision to dismiss the consolidated derivative action, Fannie Mae, with FHFA's authorization, moved to stay all cases related to the Fannie Mae multi-district litigation. (Mot. for Stay of All Proceedings [Civ. No. 07-1221, Dkt. #36]). I approved the stay for 45 days. (Order Granting Stay of All Proceedings [Civ. No. 07-1221, Dkt. #41]). On January 22, 2009, I granted FHFA's Motion to Intervene as Conservator for Fannie Mae. (Minute Order entered in Civ. No. 07-1221 on Jan. 22, 2009). Several months later, on June 25, I granted FHFA's motion to substitute itself for Middleton and ordered FHFA to notify the Court of its position on the defendants' pending Motion to Dismiss. (Mem. Order [Civ. No. 07-1221, Dkt. #51] at 6-7). FHFA did so on July 27, 2009, announcing "for the present" that it would "adopt[]" the pleadings filed in opposition by Middleton. (Status Report on the Mots. to Dismiss in Middleton and Kellmer's Shareholder Derivative Compls. [Civ. No. 07-1221, Dkt. #56] at 2). FHFA soon altered course. Claiming that it needed more time to decide whether prosecuting Middleton's derivative

action would advance the statutory purpose of the conservatorship to preserve and protect

Fannie Mae's assets, FHFA moved on September 25 to dismiss the case *without prejudice*

under Federal Rules 23.1(c) and 41(a).[2] Alternatively, FHFA requested a 180-day stay.

In response, the individual defendants moved to dismiss *with prejudice* under Rule 41(b)

on the ground that FHFA has failed to prosecute the lawsuit diligently.

## DISCUSSION

### I.     Individual Defendants' Motion For Involuntary Dismissal With Prejudice

Because the individual defendants' motion for involuntary dismissal could dispose

of the case on the merits without actually requiring the Court to address the merits of the

case, it makes sense to resolve this motion first. Rule 41(b) provides for involuntary

dismissal if the plaintiff "fails to prosecute" its case. Fed. R. Civ. P. 41(b). Typically,

dismissal is without prejudice. Under Local Civil Rule 83.23, "[a]n order dismissing a

claim for failure to prosecute *shall* specify that the dismissal is without prejudice, *unless*

the Court determines that the delay in prosecution of the claim has resulted in prejudice to

an opposing party." LCvR 83.23 (emphasis added). Thus, whether the Court should

dismiss the case with prejudice depends on whether the defendants can show that FHFA

"has not manifested reasonable diligence in pursuing the cause," *Bomate v. Ford Motor*

---

[2] This case is one of four shareholder derivative actions still pending before this Court as part of the Fannie Mae multi-district litigation. The other cases were originally captioned as *Kellmer v. Raines* (Civ. No. 07-1173), *Arthur v. Mudd* (Civ. No. 07-2130), and *Agnes v. Raines* (Civ. No. 08-1093). FHFA seeks to dismiss each of these cases without prejudice.

*Co.*, 761 F.2d 713, 714 (D.C. Cir. 1985), and that the resulting delay has caused them prejudice.

The individual defendants have not shown to the Court's satisfaction that FHFA has failed to exercise sufficient diligence in prosecuting Middleton's derivative claims. FHFA did not formally replace the original derivative plaintiff until as late as June 2009, and since then, its conduct has not been so "dilatory or contumacious" as to justify the stiff penalty of dismissal with prejudice. *See Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990). For instance, FHFA has responded to all of the Court's orders in a timely and reasonable fashion. It certainly has not disobeyed any Court order. Furthermore, FHFA's Motion for Approval of Voluntary Dismissal comes less than a mere three months after FHFA officially replaced the original plaintiff and well before the eve of trial.

The real issue, therefore, is not whether FHFA's conduct until now has been egregiously dilatory (it has not) but whether FHFA's decision to dismiss its claims with the option of bringing them again in the future is itself so dilatory as to warrant dismissal with prejudice. The individual defendants contend that in moving for voluntary dismissal FHFA has stubbornly refused to announce whether or not it intends to proceed with Middleton's derivative action and that this intentional delay justifies involuntary dismissal with prejudice. It goes without saying that a decision to move for voluntary dismissal cannot—by itself—be a basis for granting involuntary dismissal. Were that so, then

voluntary dismissal under Rule 41(a)(2) would be a nullity. The question then is whether FHFA's motion to dismiss without prejudice is an unwarranted deferral of a decision that this Court has required FHFA to make. If so, then the Court may properly deem FHFA's motion as an obstinate refusal to prosecute and thereby dismiss the case with prejudice.

Although I directed FHFA to submit a status report stating its position on the defendants' pending Motion to Dismiss, I never gave FHFA the choice to proceed with Middleton's derivative claims or face the prospect of involuntary dismissal with prejudice. It would "upset[] notions of fundamental fairness" for this Court, "in response to [FHFA's] request for dismissal without prejudice," to dismiss the case *with* prejudice, "while failing to give [FHFA] notice of its inclination to impose this extreme remedy." *Andes v. Versant Corp.*, 788 F.2d 1033, 1037 (4th Cir. 1986). Having never warned FHFA that a refusal to pursue Middleton's claims in this litigation could result in dismissal on the merits, the Court will not grant the individual defendants' Motion for Dismissal with Prejudice under Rule 41(b).

## II.    FHFA's Motion For Voluntary Dismissal Without Prejudice

Whether the Court should grant the individual defendants' motion for involuntary dismissal is, however, a separate question from whether the Court should grant FHFA's motion for voluntary dismissal. Denying the former does not mean that the Court should grant the latter. Under the Federal Rules, a derivative action may be "voluntarily dismissed . . . only with the court's approval." Fed. R. Civ. P. 23.1(c). Voluntary

dismissal by court order is without prejudice unless the court states otherwise. Fed. R. Civ. P. 41(a)(2). Before granting a motion for voluntary dismissal, the Court must satisfy itself of the following: (1) that the motion is sought in good faith, and (2) that the defendants will not suffer "legal prejudice" if the case is dismissed. *In re Vitamins Antitrust Litig.*, 198 F.R.D. 296, 304 (D.D.C. 2000). "Legal prejudice" is determined by considering four factors: (1) the defendants' effort and expense in preparation for trial; (2) excessive delay or lack of diligence on the plaintiffs' part in prosecuting the action; (3) the adequacy of the plaintiffs' explanation for voluntary dismissal; and (4) the stage of the litigation at the time the motion to dismiss is made. *Id.* at 304. Voluntary dismissal is generally "granted in the federal courts unless the defendant would suffer prejudice other than the prospect of a second lawsuit or some tactical disadvantage." *Conafay v. Wyeth Labs.*, 793 F.2d 350, 353 (D.C. Cir. 1986).

Notwithstanding that courts typically grant voluntary dismissal, FHFA has not convinced this Court that its motion is justified at this juncture. Even though the Court has no reason to believe that FHFA is acting in bad faith, it has plenty of reason to believe that the individual defendants will suffer legal prejudice if the Court grants FHFA's Motion for Approval of Voluntary Dismissal without first resolving the defendants' dispositive Motion to Dismiss, which had been pending for nearly two years before FHFA filed its motion. To be sure, the defendants' efforts preparing for trial do not support a finding of legal prejudice because the trial preparations made in this case (if

10

any) can likely be used in other cases that are part of the Fannie Mae multi-district litigation. Furthermore, the Court has already determined that FHFA is far from delinquent in prosecuting the claims that it inherited from Middleton. Notwithstanding that the first two of the four factors for determining legal prejudice weigh in favor of FHFA's motion, I find nonetheless that FHFA's explanation for seeking voluntary dismissal, coupled with the fact that the defendants had already filed a dispositive motion in this case, is enough to tip the balance against FHFA.

Before addressing the merits of FHFA's explanation for requesting voluntary dismissal, however, the Court will first address FHFA's claim that it is entitled to prevail on its motion because the Housing and Economic Recovery Act of 2008 ("HERA"), 12 U.S.C. §§ 4501 *et seq.*, precludes judicial review of FHFA's chosen course of action. FHFA contends that, as Fannie Mae's conservator, it is vested with the sole authority under HERA to protect and preserve the assets of Fannie Mae and that its decision to seek voluntary dismissal is the best means for accomplishing that end. Furthermore, according to FHFA, its decision is not judicially reviewable by virtue of a provision in HERA that specifically provides: "[N]o court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator." 12 U.S.C. § 4617(f).

FHFA construes this provision much too broadly. A careful reading reveals that the Court is barred only from interfering with the powers or functions of FHFA "as a conservator." That means that the Court cannot affect FHFA's power and authority to

11

manage Fannie Mae or to act on its behalf. It does not mean, however, that the Court is

barred from treating FHFA the same as any other litigant when FHFA invokes the Court's

authority. Nothing in the language of Section 4617(f) purports to suspend the operation

of the Federal Rules as applied to FHFA. Nor does any language in that provision entitle

FHFA to different treatment as a litigant than Fannie Mae or its shareholders would have

received had FHFA not been appointed Fannie Mae's conservator. Thus, in the absence

of a convincing basis for casting aside the usual standards governing motions for

voluntary dismissal under Rule 41(a)(2), I will not simply rubber stamp FHFA's motion.

Because FHFA is subject to the same rules as any other plaintiff seeking voluntary

dismissal, the Court must and will scrutinize the merits of FHFA's request as it would any

other. FHFA claims that dismissal without prejudice "is necessary to allow for the

Conservator to thoroughly and effectively evaluate whether continued prosecution of the

claims would further the statutory purpose of the conservatorship to preserve and protect

these assets." (FHFA's Mem. in Support of Mot. for Approval of Voluntary Dismissal

without Prejudice [Civ. No. 07-1221, Dkt. #58] at 2). In light of Congress's decision to

extend the statute of limitations as long as three years for tort claims and six years for

contract claims from the date of the conservator's appointment, *see* 12 U.S.C. §

4617(b)(12), FHFA's explanation for withdrawing Middleton's derivative claims is not

wholly unreasonable. Indeed, by extending the limitations period, Congress seems to

have contemplated that FHFA might need more time to decide whether and how to pursue

any claims it inherited as Fannie Mae's newly-appointed conservator. That alone, however, is not particularly compelling.

As the regulatory body that oversees Fannie Mae, FHFA and its predecessor the Office of Federal Housing Enterprise Oversight are already quite familiar with the facts underlying Middleton's derivative claims. Moreover, even though FHFA did not substitute itself for Middleton until three months before it moved for voluntary dismissal, it intervened as Fannie Mae's conservator a full five months earlier. Thus, FHFA was a party in the case for eight months before it moved to dismiss without prejudice. Given that FHFA had at least eight months to contemplate how this case should proceed, the Court is not particularly persuaded by FHFA's request for more time.

In addition to FHFA's less-than-compelling explanation for seeking non-suit, its decision to move for voluntary dismissal nearly two years after the defendants had filed their dispositive Motion to Dismiss also weighs against granting dismissal without prejudice. One factor that courts have recognized as a potential basis for denying a motion for voluntary dismissal under Rule 41(a)(2) is the existence of an already-pending motion for summary judgment. *See, e.g., Pace v. S. Express Co.*, 409 F.2d 331, 334 (7th Cir. 1969); *Conafay*, 793 F.2d at 352. I see little reason not to extend that rule to a defendant's fully briefed motion to dismiss, so long as that motion is already pending and would actually dispose of the case on the merits. Indeed, defendants have a reasonable expectation that when they file a motion that could resolve the case against

them—whether it be for dismissal or for summary judgment—the courts will address it. As such, allowing plaintiffs to move successfully for voluntary dismissal after the defendants' motion had become ripe would deprive the defendants of their reasonable expectation in a resolution of their pending motion. Thus, to grant FHFA's Motion for Approval of Voluntary Dismissal, which FHFA had filed nearly two years after the defendants' pending Motion to Dismiss, would be prejudicial to the individual defendants. Voluntary dismissal in favor of FHFA under Rule 41(a)(2) is, therefore, not appropriate at this time.

## III.    Defendants' Motion To Dismiss

Having disposed of the parties' dueling motions for dismissal under Rule 41, I turn to Fannie Mae's long-pending Motion to Dismiss for lack of standing, which has been joined by the individual defendants.[3] The defendants make the rather straightforward argument that Middleton has no standing to prosecute this derivative action because he failed to make a demand on Fannie Mae's board of directors or even to allege that doing so would have been futile. Under Rule 23.1, a shareholder plaintiff must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors

---

[3] Even though FHFA, as Fannie Mae's conservator, has taken Middleton's place as the shareholder derivative plaintiff, the Court will treat Middleton's pleadings as adopted by FHFA. Now that the Court has rejected FHFA's Motion for Approval of Voluntary Dismissal, the Court relies on FHFA's earlier representation that it would adopt Middleton's pleadings. (*See* Status Report on the Mots. to Dismiss in Middleton and Kellmer's Shareholder Derivative Compls. [Civ. No. 07-1221, Dkt. #56] at 2).

or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).

It is apparent from a review of the pleadings, and Middleton himself does not dispute, that he neither made a demand on Fannie Mae's board nor alleged in his Complaint that making such a demand would have been hopeless. Instead, he claims that the demand made by Kellmer in August 2004 was sufficient to give him standing to bring the same derivative claims. He relies on *Mullins v. De Soto Sec. Co.*, an old federal case out of Louisiana, for the proposition that "the necessity of demand" by additional shareholder plaintiffs "is an unnecessary requirement to impose" on them "in the face of the full demand by the original plaintiff and the unqualified refusal of this demand for redress by the officers of the corporation." 3 F.R.D. 432, 435 (W.D. La. 1944). In short, Middleton contends that a prior demand by one shareholder plaintiff can establish standing for another shareholder plaintiff to bring the same claims. In other words, Rule 23.1 does not require that the requisite demand be made by the plaintiff who ultimately brings the litigation on behalf of the corporation. The courts "have made clear," says Middleton, "that 'the identity of the specific representative shareholder plaintiff is not a paramount concern' because 'the corporation is always the real party in interest' in derivative suits." (Pl. Opp'n to Mot. to Dismiss [Civ. No. 07-1221, Dkt. #22] at 3 (quoting *In re MAXXAM, Inc./Federated Derivative S'holder Litig.*, 698 A.2d 949, 956 (Del. Ch. 1996)). I disagree.

When the co-lead plaintiffs in the consolidated action abandoned Kellmer's (and by inference Middleton's) demand-made theory and that case was dismissed as a result, the corporation as the real party in interest lost the benefit of whatever demand Kellmer made. By failing to assert Kellmer's demand, even though they had the opportunity to do so, the co-lead plaintiffs in the consolidated action waived any argument that a demand had been made on Fannie Mae's board, and the Court rendered judgment against Kellmer and all other shareholder plaintiffs on that basis. In effect, therefore, the Court already adjudicated Kellmer's demand-made claims. Unfortunately for Middleton, he cannot revive them now.

Furthermore, the Court is unpersuaded by Middleton's argument that Kellmer's demand was sufficient to put Fannie Mae's board on ongoing notice that the shareholders wanted the board to take action. The board no longer had any reason to act on Kellmer's demand because the claims for which his demand was made had been dismissed by the time that Middleton filed his action. If Middleton wanted to bring his own claims, then he should have made his own demand on Fannie Mae's board.[4]

---

[4] Middleton's much belated attempt to make a demand on Fannie Mae's board *after* Fannie Mae had already filed its Motion to Dismiss for lack of standing is utterly without merit. "Rule 23.1 specifically calls upon the complaint to show that demand was made or was properly excused; there is no provision for thereafter remedying an omission in the same suit, especially after the defendants have moved to dismiss because of the absence of a demand." *Grossman v. Johnson*, 674 F.2d 115, 125 (1st Cir. 1982).

In sum, the facts of this case are entirely different from *Mullins* where the court

allowed certain shareholder plaintiffs to intervene in an ongoing derivative case even

though they themselves had not made a formal demand on the company's board. The

*Mullins* court found that the demand made by the original plaintiff in the action was

sufficient to confer standing on the intervenor shareholder plaintiffs. Unlike Middleton's

case, however, the claims of the original plaintiff and the demand upon which the

plaintiff asserted standing to bring those claims had not yet been adjudicated. The

intervenors were thus relying on a demand that was still very much alive. That is not so

in Middleton's case. Kellmer's demand is *dead*, and Middleton's craven attempt to

resuscitate it has no basis in law. Therefore, Middleton cannot rely on Kellmer's demand

as a basis for establishing his right to bring on behalf of the corporation the same claims

that the Court dismissed in the consolidated action. Accordingly, this case must be

dismissed.

## CONCLUSION

For all of the foregoing reasons, the individual defendants' Motion to Dismiss with Prejudice for Failure to Prosecute and FHFA's Motion for Approval of Voluntary Dismissal without Prejudice are both DENIED. Fannie Mae's Motion to Dismiss for lack of standing, joined by the individual defendants, is GRANTED. An appropriate Order consistent with this ruling is attached.

RICHARD J. LEON
United States District Judge